FILED  
United States Court of Appeals  
Tenth Circuit

October 23, 2020

Christopher M. Wolpert  
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

MARK ANTHONY PALZER,

   Plaintiff - Appellant,

v.

COXCOM, LLC, d/b/a Cox Communications Tulsa,

   Defendant - Appellee,

and

COX COMMUNICATIONS KANSAS, LLC; COX OKLAHOMA TELCOM, LLC,

   Defendants.

No. 19-5094  
(D.C. No. 4:15-CV-00564-GKF-JFJ)  
(N.D. Okla.)

---

### ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.

---

Mark Anthony Palzer appeals the district court orders overruling his objection to a magistrate judge's discovery order, striking his response to the summary

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment motion filed by his former employer, Defendant-Appellee CoxCom, LLC (Cox), and granting summary judgment in favor of Cox on his claims alleging race and age discrimination. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## **Background**

Palzer is a Caucasian man over the age of forty. Cox, a telecommunications company, hired him in 2005 as a customer service representative and promoted him to an account executive position in small/medium sales group in 2008.

Cox measures an account executive's performance against two benchmarks: (1) sold quota attainment, which is measured by the dollar amount of contracts signed by the then-potential Cox customer; and (2) installed quota attainment, which is measured by the actual dollar amount of services ultimately installed and billed to the customer. Account executives are expected to meet their monthly sales quotas, but their performance is evaluated using a rolling three-month average, which is expected to be maintained at a minimum of eighty percent to quota attainment.

In 2010, Palzer's then-manager issued Palzer a documented verbal warning and put him on a thirty-day performance improvement plan (PIP) because his attained sales quota over the previous four months was only fifty-one percent. He successfully completed that PIP.

In February 2012, Cox's then-Business Sales Director, Tim Jenney, hired Shelley Stauffer, a Caucasian woman over fifty years old, as the new manager of Palzer's sales group. Palzer failed to meet his quota in December 2011 and January and February 2012, resulting in a three-month average below the eighty-percent

minimum. In March 2012, she put him on another PIP, which he successfully completed at the end of May.

Meanwhile, at Jenney's direction, Stauffer began developing a module sales territory strategy under which the account executives would prospect for and cultivate customers in assigned zip codes. Prior to its implementation, account executives could sell in any zip code in the Tulsa, Oklahoma marketplace. In developing the individual modules, Stauffer relied on internal Cox data about the number of accounts and projected revenue value of each zip code, and considered several factors, including the need to provide equal sales opportunities for each account executive and the account executives' past performance.

At the end of February 2012, Stauffer told her team about the planned transition to the module strategy and asked them to provide her with any specific zip code preferences for her to consider when she made her assignments. She explained that in assigning the zip codes, she considered the account executives' requests in the order in which she received them, decided "[t]ie breakers" by performance, and aimed to achieve "[e]quality among all team members" by "balancing total weight[ed] value with the number of zip codes assigned." Aplt. App. Vol. 4 at 761 (internal quotation marks omitted); *see also id.* at 806.

Among their preferences, Palzer and Chuck Watson, a Caucasian man under thirty, both requested two of the same zip codes. Unlike Palzer, Watson exceeded his sales quota between December 2011 and February 2012. Watson's assigned module had the highest projected value and included one of the zip codes he and Palzer had

both requested. Palzer's module included the other zip code and had the second highest projected value. He expressed concerns to Stauffer and Jenney about his assigned module territory, both with respect to the assignment process and his ability to be successful in the assigned zip codes, focusing primarily on a comparison of his and Watson's modules. Jenney reviewed and approved Stauffer's proposed modules for each account executive without making any changes to Palzer's assigned territory. The module strategy went into effect in May 2012.

Between March and May 2012, Stauffer hired three new account executives—a Caucasian woman and two African-American men, all under forty years old. Then, after Watson left for another job with Cox, Stauffer replaced him with a Caucasian man under forty and gave him Watson's module, including the zip code Palzer had requested. All of the new hires had the same monthly quotas as the original team members, but they were subject to a "ramp" period during which they had no or lower quotas for the first four months of training. *Id.* at 763 (internal quotation marks omitted).

In June 2012, Stauffer reprimanded Palzer in front of numerous other people for doing something directly contrary to what she had told him to do. A friend of Palzer's who witnessed the incident reported it to Jenney and Melissa Cruts, a Human Resources Business Partner. She told them she thought Palzer was being "singled out" and that another member of her team told her Stauffer once said, "We have enough white men in the group. We need to hire diversity." *Id.* Vol. 3 at 716 (internal quotations marks omitted); *see also id*. at 725 (internal quotation marks

4

omitted). Jenney believed Stauffer handled the situation "poorly" and, after consulting with Cruts, counseled her about her conduct. *Id*. at 751. Cruts met with Stauffer and then separately with Palzer. Stauffer denied making the "[w]hite guy" comment, but said she "does want diversity so she may have" made the diversity comment. *Id*. at 728 (internal quotation marks omitted). Palzer told Cruts he was on "Stauffer's bad side" and that he thought she had an "agenda" but "was not sure what it might be." *Id*. at 716 (internal quotation marks omitted); *see also id.* at 727. He did not make allegations of race or age discrimination.

Between June and August 2012, Palzer met the minimum three-month rolling average requirement, but he did not meet quota in September or October. After consulting with Jenney and Cruts, Stauffer put Palzer on a sixty-day PIP to run through December 2012. His rolling three-month average for October through December was sixty-eight percent, so Stauffer placed him on a thirty-day PIP extension. The PIP indicated that Palzer met his monthly installed quota attainment four times in 2011 and met his monthly sold quota attainment six times in 2012.

Palzer exceeded his monthly sold attainment quota and completed the PIP in January 2013. However, he sold below fifty percent to quota for each of the four months from February through May 2013. Based on his sales data for the twenty-nine month period from January 2011 through May 2013, Stauffer determined that Palzer sold eighty percent or more to quota during only eleven of those months. After consulting with Cruts and Keith Means, who replaced Jenney as the Director of Sales, Stauffer recommended that Palzer be discharged for continually failing to meet

5

his sales quota and for failing to improve his performance on a sustained basis despite being placed on several PIPs. Cruts "support[ed] [the] termination for a pattern of unsatisfactory performance," *id.* at 733, as did Means and three other Director-level managers. Cox terminated Palzer in June 2013. All of the people involved in the termination decision were Caucasian, and five of the six were over forty.

After filing a charge with the Equal Employment Opportunity Commission and obtaining a notice of right to sue, Palzer filed a complaint in Oklahoma state court. Cox removed the case to federal district court.[1] As pertinent here, Palzer asserted four causes of action: (1) discrimination based on age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1); (2) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); (3) retaliatory discharge in violation of the ADEA and Title VII; and (4) breach of contract.[2] The complaint alleged that Palzer performed satisfactorily before Stauffer became his manager. It referred to her

---

[1] This is the second time this case has been before this court. In the first appeal, we reversed the district court's dismissal of Palzer's complaint for failure to timely serve summons under Fed. R. Civ. P. 12(b)(5), and remanded with instructions to give him additional time to complete service in accordance with federal law. *See Palzer v. Cox Okla. Telecom, LLC*, 671 F. App'x 1026, 1028 (10th Cir. 2016).

[2] The complaint also asserted claims under the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, §§ 1101-1706. However, the district court granted Cox's motion for judgment on the pleadings and dismissed the OADA claims for lack of subject matter jurisdiction. Palzer does not challenge that order on appeal.

alleged comment that there were too many white men in her department and claimed that she both made work assignments that favored younger African-American men and gave him territories in which he could not generate new sales. The complaint further alleged that Cox management ignored his complaints about Stauffer's actions and failed to follow its internal policies and procedures for disciplining employees.

In September 2018, after the discovery deadline had passed and the day before the deadline for filing dispositive motions, Palzer filed a motion to compel further deposition testimony pursuant to Fed. R. Civ. P. 30(b)(6). Cox opposed the motion and timely filed its motion for summary judgment (MSJ). After a hearing, the magistrate judge denied the motion to compel. The district court denied Palzer's objection to the magistrate's order and, for reasons discussed below, struck Palzer's response to the MSJ and granted summary judgment in favor of Cox. Palzer now appeals those three orders.

## Order Striking Response to MSJ

Palzer first contends the district court abused its discretion by striking his late-filed response to the MSJ. We disagree.

**1. Legal Standards**

We review a district court's decision whether to accept an untimely filing for abuse of discretion. *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005). We apply the same standard in reviewing an order striking a party's pleading as untimely. *In re Young*, 91 F.3d 1367, 1377 (10th Cir. 1996).

Under Fed. R. Civ. P. 6(b)(1)(B), a district court has discretion to accept a party's late filing if the party files a motion showing that the delay was the result of "excusable neglect." The determination whether a party has shown excusable neglect warranting an out-of-time extension is "an equitable one" based on "all relevant circumstances," including: (1) "the danger of prejudice to the [opposing party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (construing the Bankruptcy Rules' counterpart to Rule 6(b)(1)(B), which at the time was Rule 6(b)(2)); *see also United States v. Torres*, 372 F.3d 1159, 1161-62 (10th Cir. 2004) (discussing the concept of excusable neglect); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (applying *Pioneer*'s definition of "excusable neglect" in Rule 6(b) context). "The most important factor is the third" and "an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017).

In the context of late-filed responses to summary judgment motions, we have held that treating the failure to respond as a waiver of the nonmovant's "right to file a response or to controvert the facts asserted in the summary judgment motion" is an appropriate consequence. *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *see also Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002) (holding

that, by failing to file a timely response to the summary judgment motion, the plaintiff waived the right to respond "and confesse[d] all facts asserted and properly supported in the [summary judgment] motion").

### 2. Application

The district court granted Palzer two extensions of time to file his response to the MSJ. On the last deadline, he filed a motion to exceed the page limit for the response brief.[3] Palzer's counsel represented that he had already "finished preparing [his] Response." Aplee. Supp. App. at 24 (italics omitted). The district court granted the motion the next morning—the day of the filing deadline—so Palzer could have filed the response on time. But he did not file it until nine days after the twice-extended deadline, and he did not file a motion seeking leave to file out of time. Then, another nine days later (eighteen days after the deadline), Palzer filed a "supplement[]" to the response with six exhibits that were referred to in but not attached to the response. Aplt. App. Vol. 10 at 2084. Three of the new exhibits were affidavits that were dated after the response was filed, which belied counsel's representation in the motion for excess pages that he had "finished preparing [the] response" nearly three weeks earlier. Aplee. Supp. App. at 24 (italics omitted). Palzer did not file a motion seeking leave to file the supplement.

---

[3] Under the district court's local rules, the motion to exceed the page limit was due no later than one day before the deadline for filing the response, so Palzer's motion was late. N.D. Okla. LCvR 7.2(c).

Cox moved to strike Palzer's response as untimely. Two days after the deadline for filing an opposition, Palzer moved to extend the expired response deadline based on the press of business. The district court granted the motion but warned counsel that "*[n]o further extensions shall be granted*." *Id.* at 32. Ignoring the no-further-extension order, Palzer moved for another press-of-business extension to respond to the motion to strike. The district court denied the motion. Nevertheless, Palzer filed an unauthorized response three days after the extended deadline, which the district court struck.

The court then granted Cox's motion to strike Palzer's late-filed response to the MSJ. In doing so, it considered the *Pioneer* factors, focusing, as *Perez* instructs, on the third factor—whether the delay was in Palzer's control and the reason for the delay. In that regard, the court noted that Palzer filed the untimely response without seeking another extension and filed the Errata/Correction and supplemental exhibits without seeking leave to do so. Accordingly, the court found he "offer[ed] *no reason* . . . outside his control that prevented him from filing a complete response, with all referenced exhibits, until . . . over three weeks after the deadline," particularly given his representation in the motion for excess pages that he had "finished preparing" the response. Aplt. App. Vol. 11 at 2436 (internal quotation marks omitted). The court commented that press-of-business extensions are not uncommon and found Palzer "offer[ed] nothing to suggest that the circumstances of this case are so unique to render his failure to timely respond excusable," concluding instead that "the procedural history of this matter suggests a pattern and practice by [Palzer's] counsel

of disregarding the" rules and the court's deadlines. *Id.* Turning to the fourth *Pioneer* factor—whether the movant acted in good faith—the court found the "circumstances surrounding [Palzer's] response suggest bad faith," citing the "finished preparing" representation and noting that the untimely response was incomplete, some of the supporting materials were prepared after the untimely and incomplete response was filed, and the response was not complete until three weeks after the extended deadline. *Id*. at 2437. The court concluded that "[t]hese circumstances strongly suggest that [Palzer's] counsel engaged in questionable, if not bad faith[,] conduct[] and delayed filing his response brief in order to obtain additional time to complete the brief and exhibits without leave of . . . court." *Id*. Finally, with respect to the first and second *Pioneer* factors—prejudice to the opposing party and the effect of the delay on the proceedings—the court found Palzer's continued "delinquencies" prejudiced Cox and delayed the proceedings because the court had "to strike all remaining scheduling order deadlines a month prior to the hearing on dispositive motions." *Id*. at 2438.

The court thus determined that "all four of the relevant factors weigh in favor of striking" Palzer's response to the MSJ. *Id*. It recognized that "[s]triking a summary judgment response is not something this court takes lightly," but concluded that "if ever circumstances existed to warrant the action, this is such a case" because "[t]hroughout the course of this litigation, [Palzer's] counsel has demonstrated a disregard for the" rules, the court, and opposing counsel. *Id*.

Contrary to Palzer's suggestion, the court did not strike the response based on formatting errors or because it failed to address the factual material in Cox's MSJ with sufficient particularity, and the court's reference to counsel's dilatory tactics in another case does not mean it struck the response based on considerations unrelated to this case. The court struck the response because Palzer's counsel flaunted the rules and the court's deadlines and did not establish excusable neglect for filing the response almost three weeks after the twice-extended deadline without seeking leave to do so. Palzer takes issue with the court's finding that the delay prejudiced Cox and negatively impacted the proceedings, complains about delays Cox allegedly caused, maintains the court permitted Cox to engage in unnecessarily burdensome litigation tactics, and quibbles about formatting errors in Cox's MSJ. But none of that undermines the district court's conclusion that Palzer failed to establish that his untimely filing was the result of excusable neglect. After carefully examining the record, we conclude the district court acted well within its discretion in striking Palzer's response. *See Perez*, 847 F.3d at 1253 (affirming denial of late-filed motion to file untimely response to summary judgment motion based solely on counsel's inadequate explanation for the delay, noting that "[h]ad counsel's error been isolated, our decision might be different"). And we are not persuaded otherwise by Palzer's arguments that he should not be penalized for counsel's unexcused conduct or that the court should not have both sanctioned counsel and struck the response. *See Pioneer*, 507 U.S. at 396 (noting "clients must be held accountable for the acts and omissions of their attorneys" and rejecting the contention that severe sanctions,

including dismissal, "because of . . . counsel's unexcused conduct imposes an unjust penalty on the client" (internal quotation marks omitted)).

### Order Granting Summary Judgment

We also reject Palzer's argument that the district court erred by granting summary judgment for Cox.

As an initial matter, we note that Palzer's appeal focuses on the portion of the order granting summary judgment for Cox on his age and race discrimination claims accruing after May 18, 2013—the claims concerning his termination. The district court also granted Cox's MSJ with respect to Palzer's state law contract claim, his retaliation claim, and the AEDA and Title VII claims that accrued before May 18, 2013. But Palzer does not challenge those rulings on appeal and has therefore abandoned any arguments he might have made by not briefing them. *See Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013). Accordingly, we do not address the propriety of that portion of the summary judgment order and consider only the issues Palzer raised in his opening brief. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

**1. Summary Judgment Standard**

"We review the district court's grant of summary judgment de novo." *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006). "[W]e conduct that review from the perspective of the district court" when it ruled on the motion, "limiting our review to the materials adequately brought to the attention of the district court by the

parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). At the summary judgment stage, we, like the district court, "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (ellipsis and internal quotation marks omitted).

"Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

The moving party has the initial burden of showing that no genuine dispute of material fact exists. *Adler*, 144 F.3d at 670-71. If the evidence in support of the motion does not meet the movant's initial burden, the motion "must be denied even if no opposing evidentiary matter is presented." *Reed*, 312 F.3d at 1194 (emphasis and internal quotation marks omitted). But if the movant carries his initial burden, "the burden shifts to the nonmovant to . . . set forth specific facts . . . from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671.

A district court may not grant summary judgment based on the nonmovant's failure to file a response, but a plaintiff who fails to file a timely response waives the right to respond and to controvert the facts asserted in the motion. *Reed*, 312 F.3d at 1194; *Murray*, 312 F.3d at 1199. And if the party opposing summary judgment fails

to timely respond with evidence that creates a genuine factual dispute, the court may "consider the [movant's] fact[s] undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also Reed*, 312 F.3d at 1194.

### 2. Standard for Proving Employment Discrimination

In employment discrimination cases, the plaintiff bears "the ultimate burden of proving [his] employer intentionally discriminated against [him]." *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015). Where, as here, a plaintiff uses circumstantial evidence to show his employer's discriminatory intent, we employ the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056-57 (10th Cir. 2020) (applying *McDonnell Douglas* to ADEA claim); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (same in Title VII context).

Under that framework, if the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. *Khalik*, 671 F.3d at 1192. If the defendant does so, the burden shifts back to the plaintiff to show the employer's proffered explanation is a pretext for discrimination. *Id.*

### 3. Application

Here, the parties disputed whether Palzer had established a prima facie case of discrimination and, in particular, whether showing satisfactory performance is part of a prima facie case, whether he had to show Cox replaced him with a younger non-Caucasian person, and whether pretext evidence should be considered at the prima facie case stage. The district court did not resolve those issues because it concluded Cox was entitled to summary judgment based on its undisputed evidence of a legitimate nondiscriminatory reason for terminating Palzer and his failure to raise a genuine issue of material fact that Cox's performance-based reason was pretextual. Neither party challenges the district court's decision to skip the prima facie case analysis, and we need not address whether Palzer established a prima facie case to resolve the appeal.

Based on the materials submitted with the MSJ, the district court determined that Cox established that "over the course of his most recent seventeen months of employment [January 2012 through May 2013], Palzer satisfied his quota only five times," and that during the three-month period immediately before his discharge, his rolling average was below eighty percent. Aplt. App. Vol. 11 at 2507. The court further found it undisputed that Palzer failed to successfully complete his third and final PIP, which had expressly noted his unsatisfactory "three month cumulative installed quota and sold quota" data. *Id*. Based on those undisputed facts, the district court concluded that Cox "satisfied its burden of production to demonstrate a legitimate, non-discriminatory reason for [Palzer's] termination." *Id*.

The burden of production then shifted to Palzer to show that Cox's performance-based reason for his termination was pretextual. But by failing to timely respond to the MSJ, Palzer confessed the facts set forth in the motion and waived the right to controvert them. *See Reed*, 312 F.3d at 1194; *Murray*, 312 F.3d at 1199. Accordingly, under Rule 56(e), the district court properly considered those facts undisputed for purposes of the motion and granted summary judgment on that basis. *See Perez*, 847 F.3d at 1253-55 (affirming denial of late-filed motion to file response to motion for summary judgment and granting summary judgment after reviewing the summary judgment evidence). We reject Palzer's arguments that the district court impermissibly resolved facts in Cox's favor and otherwise failed to adhere to the proper standards for evaluating evidence at the summary judgment stage. Those arguments are tethered to his failed challenge to the order striking his response and are contrary to our holdings in *Reed*, *Murray*, and *Perez*.[4]

---

[4] Although it was not required to do so, the district court went on to consider—and reject—the pretext arguments Palzer made in his stricken response. We decline to do so here and therefore do not address his arguments that the district court erred by considering the fact that Stauffer and other Cox management-level employees involved in the discharge decision were members of one or both of the protected classes, and that Cox imposed unattainable production goals, treated him differently from other similarly-situated non-protected employees by holding them to a different standard even after their "ramp" periods ended, and failed to follow its internal procedures. We also disregard Palzer's recitation in his opening brief of the disputed pretext-related facts set forth in his stricken response and reject his attempt to put these facts into dispute on appeal.

### Order Overruling Magistrate Judge's Discovery Order

Finally, Palzer claims the district court abused its discretion by overruling his objection to the magistrate judge's order denying his motion to compel further discovery. But he makes no meaningful argument attacking that order—he merely incorporates by reference the arguments he made in his district court pleadings. Our rules state that "[i]ncorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Federal Rules of Appellate Procedure 28(a) and (b)." 10th Cir. R. 28.3(B). Accordingly, we do not address this issue. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) (noting we do not address issues not adequately briefed).

### Conclusion

Because Palzer has not demonstrated any reversible error in the district court's orders, the judgment is affirmed.

                                      Entered for the Court

                                      Allison H. Eid
                                      Circuit Judge